UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AMTRUST AT LLOYD'S LTD,** <br><br> Plaintiff, <br><br> v. <br><br> **MARQISE LEE,** <br><br> Defendant. | No. 15–cv–1615 (KM)(JBC) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion (ECF No. 4) of defendant Marqise Lee to dismiss the complaint (ECF No. 1) of the plaintiff AmTrust at Lloyd's LTD for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); to dismiss or transfer the venue of this action, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. 1406(a); or, alternatively, to transfer the venue pursuant to 28 U.S.C. 1406(a), to the Central District of California. Reviewing the parties' submissions, I find that the Central District of California is a more appropriate venue for this action. Accordingly, the motion to transfer venue is **GRANTED**, and the motion to dismiss for lack of personal jurisdiction is denied as moot.

## I. BACKGROUND

### A. Parties

Marqise Lee was a college football player at the University of Southern California from 2011–13. (Lee Decl. ¶¶ 2–3 (ECF No. 8))[1] AmTrust, a United Kingdom corporation with its place of business in the UK, is an underwriter at Lloyd's, London. (Compl. ¶ 9; Southall Decl. ¶ 4 (ECF No. 25–1))

### B. Facts

Lee's stellar performance on the football field during his sophomore year at USC (2012) earned him the Fred Biletnikoff Award, given to the best collegiate wide receiver. (Lee Decl. ¶ 3) Lee was an elite prospect for the National Football League, but was not eligible to enter the NFL draft, which requires players to be out of high school for three years. (Lee Decl. ¶ 4); see http://operations.nfl.com/the-players/the-nfl-draft/the-rules-of-the-draft/ (last visited April 6, 2016).

The NCAA offered certain athletes, such as Lee, the opportunity to purchase loss of value insurance. The purpose of such a policy is to protect them against the risk of suffering an injury while participating in college athletics that would impair their draft prospects and future earnings. (Lee Decl. ¶ 5) In August 2013, Lee received proposals from insurance agents through the USC Office of Athletic Compliance in California. (Lee Decl. ¶ 6) Hanleigh Management, Inc., a New Jersey agent for insurance companies issuing high-limit special risk disability insurance policies, has acted on behalf of AmTrust as a surplus lines agent. (Southall Decl. ¶¶ 2–3) On August 8, 2013, Ronnie

---

[1] AmTrust alleges in its complaint that Lee is a California resident. (Compl. ¶ 10) AmTrust argues in its brief that Lee's home forum is Florida where he plays football for the Jacksonville Jaguars. (AmTrust Br. 13 (ECF No. 25)) Lee represents that he maintains a substantial presence in California during the NFL off-season. (Lee Aff. ¶ 2)

2

Kaymore, a licensed insurance broker in New Jersey, contacted Hanleigh for a quote for Lee. (Southall Decl. ¶¶ 6–7, 9)[2] On August 23, 2013, Lee completed an application for a policy at the USC Office of Athletic Compliance covering August 15, 2013, to August 1, 2014, which was "proposed by Lloyd's of London." (Lee Decl. ¶¶ 8–9) The policy covered as much as $10 million in total disability coverage and $5 million in loss of value coverage. (Zucker Aff. Ex. 2 at 5 (ECF No. 6–2)) The policy lists a $94,600 premium. (*Id.*)

On September 28, 2013, Lee was injured in a game against Arizona State University. (Lee Decl. ¶ 11) He sought treatment from the USC medical and training staff and then at USC's Keck Hospital in California. (Lee Decl. ¶¶ 11–12) On October 3, 2013, USC sent Lee's medical records to Hanleigh. (Southall Decl. ¶ 21) On November 15, 2013, Hanleigh issued and delivered the policy to Lee through Kaymore. (Compl. ¶¶ 14, 16) On November 15, 2013, Lee received a copy of his policy from USC's Office of Athletic Compliance. (Lee Decl. ¶ 13) AmTrust claims that the policy was negotiated and formed in New Jersey through November 15, 2013.[3] (Compl. ¶ 14; Southall Decl. ¶¶ 10–11) Lee did not physically enter the State of New Jersey during this period, nor does he currently live in New Jersey. (Lee Aff. ¶¶ 14–15 )

On May 23, 2014, Lee submitted a claim for benefits under the policy. (Compl. ¶ 17) AmTrust investigated the claim. It alleges that Lee's application "made misstatements, omission and/or concealments" and that Lee did not disclose the changes to his health from his injury before the policy issued on November 15, 2013. (Compl. ¶ 18) On March 3, 2015, AmTrust sent Lee a

---

[2] Lee's relationship with Kaymore is disputed. AmTrust claims that Kaymore was Lee's agent. (*See, e.g.*, Southall Decl. ¶ 8) Lee maintains he dealt only with the USC Office of Athletic Compliance and that he was under the impression that this was required according to NCAA and USC rules. (Lee Decl. ¶¶ 6–7)

[3] That there was any negotiation is also contested. (Lee Br. 20 (ECF No. 22) (citing Lee Decl. ¶¶ 8–9))

formal decision letter rescinding his policy and refunding his insurance premium. (Compl. ¶ 22)

The next day, March 4, 2015, this action for declaratory judgment was filed in the District of New Jersey. (ECF No. 1) Later that same day, Lee filed an action for breach of contract and the duty of good faith and fair dealing against AmTrust and two other insurance entities in the United States District Court for the Central District of California, No. 15–cv–01614. (*See* Zucker Aff. ¶ 3; Ex. 1 (ECF Nos. 6, 6–1))

Now before the Court is a motion by Lee to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss or transfer the venue of this action, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. 1406(a), or, alternatively, to transfer venue, pursuant to 28 U.S.C. 1404(a), to the Central District of California.

## II. DISCUSSION

### A. Standard of Review

Personal jurisdiction over a non-resident defendant, such as Lee, is proper in this Court if the defendant has "'certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)).[4]

---

[4] On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff, *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir.2002), but the court must still examine any evidence presented with regard to disputed factual allegations. *See, e.g., Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155–56 (3d Cir.2010) (examining the evidence supporting the plaintiffs allegations); *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir.1990) ("'A Rule 12(b)(2) motion ... is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a ... court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The [relevant] test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim....'" *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir.1994); *accord Bockman*, 459 F. App'x at 161; *see* 28 U.S.C. § 1391(b)( "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").[5]

The Third Circuit, as well as courts within this Circuit considering motions for permissive transfer, have been guided by a number of non-exclusive public and private interest factors:

> The private interests have included: plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home; the public policies of the fora,

---

proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.'") (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir.1984)).

[5] On a motion to dismiss or transfer venue under Fed. R. Civ. P. 12(b)(3), the court generally accepts the allegations in the pleadings as true, "unless those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012). By contrast with a personal jurisdiction motion, the Rule 12(b)(3) movant for a change of venue has the burden of demonstrating that venue is improper. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724–25 (3d Cir.1982).

5

and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir.1995) (internal citations omitted).

"Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum." *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007). Thus a court make a discretionary Section 1404(a) determination without first establishing personal jurisdiction. *See Lafferty*, 495 F.3d at 80 (citing the holding in *United States v. Berkowitz*, 328 F.2d 358 (3d Cir. 1964) "that a § 1404(a) transfer was available even though there was no personal jurisdiction.").

### B. Analysis

Judge Chesler of this Court, faced with a nearly identical scenario, decided to transfer the venue of the action to the Central District of California. *AmTrust at Lloyd's Ltd. v. Breslin*, No. CIV 14–7761, 2015 WL 1399588, (D.N.J. Mar. 26, 2015). Morgan Breslin, Lee's teammate, was likewise an NFL prospect who signed up for a loss of value insurance policy with AmTrust through USC, Kaymore, and Hanleigh. *Id.* at *1. He was injured—coincidentally, in the same game as Lee—and was treated at USC, by doctors in California, and by other doctors in Germany. AmTrust denied coverage and rescinded the policy, contending that Breslin had failed to disclose injuries in his application or to update his health status. On December 12, 2014, AmTrust filed a declaratory judgment action in the District of New Jersey, and on January 16, 2015, Breslin filed an action against AmTrust in the Central District of California.

The court in *Breslin* performed the *Jumara* analysis and found that it favored transferring venue. *Id.* at *5. As to the private factors, Judge Chesler stressed that, because New Jersey was not AmTrust's home forum, AmTrust's preference deserved comparatively less deference. On the other hand, Breslin did have a strong preference for California, his home state and the location

where he had filed a suit against AmTrust. *Id.* at * 3. Further, California was a more convenient venue for resolution of questions regarding Breslin's injury, because he was treated there, and most of the relevant witnesses and records would be found there. *Id.* As for the public factors, *Breslin* found that the disputed personal jurisdiction over Breslin would complicate the suit in New Jersey in a manner that would be avoided in California, so the venue transfer would save both the litigants and the court time and resources. *Id.* at *4–5.

The same reasoning applies to Lee. As for the first private factor, in the analogous *forum non conveniens* context[6] it is well established that the "heavy burden in opposing the plaintiff's chosen forum" is lessened when the plaintiff does not choose its home forum. *Sinochem*, 549 U.S. at 430 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, 102 S. Ct. 252 (1981)); *see also Breslin*, 2015 WL 1399588, at *3 (citing *Lony v. E.I. Dupont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir.1989)). Thus AmTrust, a U.K. corporation, does not benefit from a strong presumption in favor of its choice to litigate in New Jersey, which is likely attributable to litigation strategy.

Further, AmTrust's suit rests on the question whether Lee provided accurate health records to AmTrust and properly updated AmTrust after his injury. (Compl. ¶¶ 18–19) Thus, the basis for this claim arose in California, where Lee's health records were generated and his injuries were treated. (Lee Decl. ¶¶ 11–12; Southall Decl. ¶ 21) As in *Breslin*, a significant portion of the relevant witnesses and records will be located in California. Such testimony and evidence will include information regarding the treatment for the September 28, 2015 injury, as well as any possible injuries Lee allegedly did not disclose. Lee also alleges that he filled out all the forms relating to the

---

[6] When the choice is between two sister federal courts, Section 1404(a) is in essence a codification of the *forum non conveniens* doctrine, providing for transfer rather than dismissal. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184 (2007).

policy through USC; it follows that any witnesses and documents regarding that process will be in California. (Lee Decl. ¶¶ 8–9)

As in *Breslin*, the only non-neutral public factor—the ease, or not, of establishing personal jurisdiction—supports transfer of this action to California. "[W]here there is a bona fide dispute over the existence of *in personam* jurisdiction, the interests of justice are furthered by transfer of the action to another district in which the action could have clearly been brought." *Breslin*, 2015 WL 1399588, at *4 (citing *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir.1981)). This Court's power to exercise jurisdiction over Lee is murky at best. Lee argues that he did not set foot in or direct any communications towards New Jersey throughout the process of choosing, signing, and providing a medical history and records for the policy; rather, he was solicited by insurance agents through USC. (Lee Decl. ¶ 6) The relationship of Kaymore to both parties is disputed, and the attribution of Kaymore's actions in New Jersey to Lee might require complex factual development. The extent to which there was a negotiation over the policy's terms is disputed. A proper minimum contacts analysis would at least require that the Court gather further facts about the relationships and interactions between AmTrust, Hanleigh, Kaymore, USC, and Lee. That expenditure of resources and time—possibly resulting in nothing more productive than a finding of that this Court lacks jurisdiction—could be avoided by simply transferring the action to California.

One difference between *Breslin* and this case is that Breslin was unequivocally established to be a California resident. *Breslin*, 2015 WL 1399588, at *4. Here, Lee's home forum is disputed; he now plays for Jacksonville, a Florida team, but he was a California resident, and still seems to spend substantial time there in the off-season.[7] *See* note 1, *supra*. This may

---

[7] I say "disputed" advisedly. It is quite possible, based on the facts in front of the Court, that Lee's home forum is California. AmTrust certainly seems to have

8

temper the strength of Lee's preference for California as his "home" forum, but does not by any means nullify it. It does nothing to strengthen AmTrust's claim that New Jersey is the proper venue, and it does not detract from any of the aforementioned reasons that California is a more appropriate venue.

> As Judge Chesler put it (I substitute Lee's name for Breslin's):
>
>> While the transaction culminating in the Policy was brokered by Kaymore, operating in New Jersey, and issued by Amtrust through its New Jersey agent, Hanleigh, it is clear that the events at the core of this coverage dispute arose in California. In short, California is the forum with the greatest connection to the facts underlying both [Lee]'s claim for coverage under the Policy and Amtrust's stated reasons for denying coverage and/or asserting the Policy is invalid. These factors, together with the relative weight of the parties' expressed forum preferences, militate in favor of venue transfer.

*Breslin*, 2015 WL 1399588, at *4.

AmTrust argues that the "first filed" rule nullifies Lee's preference for California. (AmTrust Br. 13) It made a similar argument on reconsideration in *Breslin*, where the declaratory judgment action and the insured's action were separated by a month, rather than (as here) a few hours. *See AmTrust at Lloyd's Ltd. v. Breslin*, No. CIV 14-7761, 2015 WL 2092669, at *2 (D.N.J. May 5, 2015) (on reconsideration).

"[C]ourts have consistently recognized that the first-filed rule is not a rigid or inflexible rule to be mechanically applied...." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 976 (3d Cir. 1988), *aff'd*, 493 U.S. 182, 110 S. Ct. 577 (1990). Specifically, "courts have rejected the rule when ... the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." *Id.* at 976–77 (collecting cases). This is especially so where, as here, a declaratory judgment action was filed mere hours before a mirror-image action, in the natural plaintiff/defendant

---

assumed so, as it did in the case of Breslin, when it raced to file this suit in New Jersey. (*See* Compl. ¶ 10)

9

configuration, seeking coercive relief. *See Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010) ("we ordinarily give priority to the coercive action, regardless of which case was filed first"); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551–52 (6th Cir. 2007) (there is practically "a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit"); *see also Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 502 F. App'x 201, 206 (3d Cir. 2012) (non-precedential) (approvingly citing the 6th and 7th Circuit cases). Under these circumstances, application of the "first filed" rule would be arbitrary and technical in the extreme.

The Central District of California is a more convenient venue than the District of New Jersey for litigation of this action, and I so find, pursuant to 28 U.S.C. § 1404(a).

### III. CONCLUSION

Lee's motion to transfer venue under 28 U.S.C. 1404(s) is **GRANTED**. AmTrust's declaratory judgment action will be transferred to the Central District of California.

Dated: April 12, 2016

*/s/ Kevin McNulty*
**Hon. Kevin McNulty**
**United States District Judge**